CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 13 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| AYOUB MSEROUEL, | ) CASE NO. 7:11CV00209 |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| vs. | ) |
| AL MACNAUGHTON, ET AL., | ) By: Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant(s). | ) |

Ayoub Mserouel, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that prison officials have discriminated against him on the basis of his national origin by denying him the opportunity to participate in a "GED class." He included with his complaint a motion for interlocutory injunctive relief and thereafter submitted an amended complaint and a motion for appointment of counsel. The court finds that Mserouel's allegations as amended fail to state any claim actionable under § 1983. Accordingly, the court will summarily dismiss Mserouel's action without prejudice for failure to state a claim and deny his motions.

I

Mserouel alleges the following sequence of events on which he bases his claims. Mserouel is a native of Morocco, Africa, serving a Virginia criminal sentence of imprisonment with eight years remaining to serve. In January 2011, he wrote a request for service form (RFS) to Al MacNaughton, principal of the Department of Correctional Education (DCE) at Pocahontas State Correctional Center (PSCC), asking to be placed in the GED program. MacNaughton replied a few weeks later that Mserouel was not eligible to participate in the class because he had

a detainer pending against him. When Mserouel asked to see a copy of the policy on which MacNaughton was relying, the answer was:

> DCE is mandated by law to provide GED services to native, English speaking offenders. Anyone who is a non-native English speaker is exempt. In addition our primary focus is to provide GED services for those offenders who will be reentering society. Having said this if there is not a waiting list for GED classes then we would be able to enroll those who are exempt but wanted to take classes anyway. Currently we have a waiting list so we cannot put you in a program at this time.

(Compl. 3.)

When Mserouel pursued administrative remedies about being denied access to the GED class, his grievance was ruled "unfounded." He then searched the policies of the Virginia Department of Corrections (VDOC) and found no express restriction making him ineligible for the GED class, as the principal had claimed. Mserouel presents affidavits from other non-inmates who are not native English speakers, who have been allowed to take GED classes at PSCC. He claims that these individuals also have detainers pending against them. Mserouel also complains that the officials who denied his grievance appeals have violated his rights by refusing to correct the situation.

Mserouel claims that the defendants' refusal to allow him to enter the GED class constitutes a violation of his equal protection rights. He also claims that denial of this educational opportunity has deprived him of a property right in violation of due process and prevents him from exercising his First Amendment rights. As relief, he seeks monetary damages and injunctive relief, including a preliminary injunction, directing that he be allowed to participate in the desired program.

## II

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. It "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted). Thus, to prove an equal protection claim, litigants "'must first demonstrate that [they] ha[ve] been treated differently from others with whom [they are] similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" Veney, 293 F.3d at 730 (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)).

Furthermore, inmate litigants must demonstrate that any unequal treatment is not rationally related to a legitimate governmental purpose. Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989) (finding no equal protection violation where inmates sentenced in D.C. courts and housed in federal prisons could not earn good time at as favorable a rate as inmates sentenced in D.C. courts and housed in D.C. prisons) (citations omitted). See also Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993) (finding no equal protection violation where inmate with sentence to serve in state prison facility spent long period in local jail with less favorable conditions, specifically, overcrowding, inadequate exercise facilities, poor climatological conditions, and an inadequate library with restricted access).

Mserouel's allegations and submissions clearly indicate that he has not been deprived of his equal protection rights or discriminated against illegally because of his national origin. Prison officials have expressed to Mserouel a legitimate governmental interest behind their selection of GED class participants: a public policy directive to provide their limited educational resources <u>first</u> to those inmates most likely to benefit from them – native English speakers who are closest to being released into society at the completion of their terms of confinement. The DCE policy he challenges, which allows GED class entry to non-native speakers who are facing longer terms of confinement only when there is no waiting list of native English speakers nearing release, is rationally related to officials' stated interest. Therefore, its application to bar Mserouel from the GED class for the time being is not unconstitutional.

This equation is not changed by Mserouel's affidavit evidence that other non-native speakers with detainers have been allowed GED participation. He fails to demonstrate that the situation existing at the time of their entry into the GED program was similar to his situation in all material respects. It may be that no waiting list of native speakers existed at the time his affiants asked to participate in the GED class or that the policy giving native speakers a preference to GED education did not exist at the time the affiants joined the class. Because prison officials have demonstrated a legitimate interest furthered by that policy, however, their implementation of it in Mserouel's case was lawful. Finally, the fact that other inmates of various national origins have been allowed to take the GED class baldly contradicts Mserouel's accusation that officials have discriminated against him merely because of his ethnic background. Based on the foregoing, the court concludes that Mserouel's equal protection and discrimination claims are without factual or legal substance and must be summarily dismissed, pursuant to § 1915A(b)(1), as frivolous.

Mserouel also asserts that the defendants have violated his First Amendment and Due Process rights by denying him access to the class. Inmates' First Amendment rights, like their equal protection rights, are not violated by official actions that are rationally related to, and further, a legitimate governmental interest, such as giving an education preference to native English speakers close to release. See Washington v. Harper, 494 U.S. 210, 223 (1990). Mserouel also fails to demonstrate that he has any protected liberty or property right in receiving an education while in prison. See Bowring v. Godwin, 551 F.2d 44, 48 n. 2 (4th Cir. 1977) (finding that inmates have no constitutional right to rehabilitative programming while in prison). Therefore, he also has no right to any particular procedural protection before being denied an educational opportunity. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (finding procedural due process right triggered only by official action against inmate that either exceeds expected conditions of sentence so dramatically as to implicate "protection by the Due Process Clause of its own force" or that "imposes atypical and significant hardship on [inmate] in relation to the ordinary incidents of prison life" so as to create a protected liberty interest in avoiding the action). Like his equal protection claims, his due process and First Amendment claims must be summarily dismissed as frivolous.

### III

For the stated reasons, the court concludes that Mserouel's allegations do not give rise to any constitutional claims actionable under § 1983. Therefore, the court will summarily dismiss his complaint, pursuant to § 1915A(b)(1), as factually and legally frivolous and will deny his pending motions for interlocutory injunctive relief and appointment of counsel. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 13th day of June, 2011.

/s/ Jane Conrad
Chief United States District Judge